UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

                                                    Case No. 06-43018-608
MOHAMED E. KHAFAGA,                                 Chapter 7


                        Debtor.
------------------------------------------------------------------x
RESCUECOM CORPORATION,

                        Plaintiff,


            - against -                              Adv. Pro. No. 09-01259-608


MOHAMED E. KHAFAGA,
                        Defendant.
------------------------------------------------------------------x


## DECISION


APPEARANCES:

Edward Gegan, Esq.                      Wayne Greenwald, Esq.
2560 Burnet Avenue                      175 Park Avenue South, 26th Floor
Syracuse, New York 13206                New York, New York 10016
Attorney for Plaintiff                  Attorney for Defendant


                        CARLA E. CRAIG
                Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of the Defendant, Mohamed E. Khafaga, ("Defendant" or "Khafaga") to dismiss this adversary proceeding commenced by Rescuecom Corporation ("Plaintiff" or "Rescuecom"), seeking to have the debt owed to it by the Defendant declared nondischargeable pursuant to 11 U.S.C §§ 523(a)(2)(A), 523(a)(2)(B), and 523(a)(6). Additionally, the Defendant argues that Plaintiff's request for leave to file an amended complaint should be denied. For the reasons set forth below, the Defendant's motion to dismiss is granted with respect to the claims asserted under §§ 523(a)(2)(A) and (a)(2)(B), and denied with respect to the claim asserted under § 523(a)(6).[1] The Plaintiff's request for leave to amend is granted.

## Facts

The following is a summary of the relevant allegations of the complaint.

Rescuecom is a computer services franchisor that offers franchised computer services businesses nationwide. Rescuecom franchisees offer computer services including computer consulting, repair and Internet services to business and residential customers. (Complaint[2] ¶ 8.) On July 30, 2004, the Defendant executed a franchise agreement with the Plaintiff to operate a franchised business in the State of New York. (Complaint ¶ 10.) The Defendant and his wholly owned corporation "01 Networks, Inc." were collectively the franchisee of Rescuecom, operating the Rescuecom franchise in the State of New York. (Complaint ¶ 9.) On December 30, 2004, after operating his Rescuecom franchise for some time, the Defendant purchased a second franchise, signing a second franchise agreement

---

[1]Unless otherwise indicated, statutory citations are to provisions of Title 11, U.S.C.

[2] "Complaint" refers to the complaint filed on May 19, 2009.

substantially similar to the first (collectively, the "Franchise Agreements" or the "Agreements").

(Complaint ¶ 11.)

The Franchise Agreements prohibited the Defendant from competing against Rescuecom and from diverting business away from Rescuecom, during the term of the Agreements and for a period of time after any termination of the Agreements.  Under the Franchise Agreements, the Defendant was required to report all sales and services rendered and all income earned through providing computer services, and to pay royalties on all such revenue, whether or not it was formally provided through his corporate entity.  (Complaint ¶ 12.)   The Defendant was further required by the Franchise Agreements to make annual financial disclosures to Rescuecom, which included disclosure of all business and personal bank accounts, all business and personal tax returns and all sales and income.  (Complaint ¶ 16.)

The Defendant, acting himself and in concert with his wife, Linda Tse, arranged to secretly operate another business named Computer Medics USA, Inc. ("Computer Medics"), under Linda Tse's name, to generate income providing computer repair services without reporting sales or services rendered through Computer Medics to Rescuecom or paying royalties to Rescuecom on that revenue.  (Complaint ¶ ¶ 13, 22.)  The Defendant also diverted and attempted to divert business and customers from his Rescuecom franchise to Computer Medics, and after the termination of his franchises, continued to solicit, divert and attempt to divert Rescuecom customers to his Computer Medics business, in breach of his covenants not to compete and covenants not to solicit or divert such customers away from Rescuecom. (Complaint ¶ 14.)

The sales, services and revenue reported by the Defendant to Resuecom, never included sales, services and revenue generated through the Computer Medics business, and therefore, all

such reports were false and under-reported the Defendant's true sales, services and revenue. (Complaint ¶ 15.) The Defendant failed to provide the annual reports required under the Franchise Agreements, even after due demand and notice that such failure was a breach of the Franchise Agreements. (Complaint ¶ 17.) The Defendant failed to make the required annual financial disclosures because doing so would have revealed that he was secretly competing against Rescuecom, was failing to report all sales and services, and failing to pay royalties on revenue earned from such sales and services. (Complaint ¶ 18.)

On September 21, 2005, the Plaintiff forwarded a notice of default regarding his violations of the Franchise Agreements by means of operating a separate competing business, his failure to report those sales to Rescuecom and pay royalties upon them, and his failure to provide financial disclosure and information. (Complaint ¶ 23.) The Defendant failed to cure such defaults or make other arrangements with Rescuecom for the curing of such defaults. (Complaint ¶ 24.) On November 16, 2005, the Plaintiff forwarded a notice of termination of the Franchise Agreements to the Defendant. (Complaint ¶ 25.)

Prior to termination of the Defendant's franchise, Rescuecom discovered the existence of the Computer Medics business, and confronted the Defendant about whether he was involved. (Complaint ¶ 19.) The Defendant denied any involvement in Computer Medics, denied that he assisted in its operation or performed any services for it, and described it as a competitive venture launched by his wife, against his wishes because she was leaving and divorcing him. (Complaint ¶ 20.) The Defendant later recanted those lies and admitted that he was behind the operation of Computer Medics, that he performed services for customers through it, and derived revenue from it. (Complaint ¶ 21.)

The Plaintiff commenced an action in State Court against the Defendant for damages, including stipulated damages resulting from the Defendant's alleged fraudulent scheme and breach of contract ("State Court Action").  (Complaint ¶ 26.)  On August 26, 2006, the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, thereby staying the State Court Action.  (Complaint ¶ 27.)  On May 19, 2009, the Plaintiff filed the Complaint alleging that the debt owed to it by the Defendant is nondischargeable pursuant to 11 U.S.C §§  523(a)(2)(A), 523(a)(2)(B), and 523(a)(6), which the Defendant seeks to dismiss by this motion.

<u>Jurisdiction</u>

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 1334, and the Eastern District of New York standing order of reference dated August 28, 1986.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

<u>Legal Standard</u>

The Defendant's motion to dismiss is governed by Federal Rules of Civil Procedure12(b)(6) and 9(b), made applicable in bankruptcy proceedings by Federal Rules of Bankruptcy Procedure 7012 and 7009, respectively.  Based on the Plaintiff's failure to state claims under §§ 523(a)(2)(A) and 523(a)(2)(B), the Rule 9(b) issue is moot.

<u>I.  Rule 12(b)(6)</u>

To defeat a motion to dismiss under 12(b)(6), a complaint must set forth a "plausible entitlement to relief."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559 (2007).  Conceivable claims are no longer sufficient.  <u>Bell Atl.</u>, <u>Id.</u> at 570 (complaint should be dismissed under

12(b)(6) where "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible "). As interpreted by the Second Circuit, the plausibility requirement does not create a heightened pleading standard, but rather a flexible standard that "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143,157-158 (2d Cir. 2007); see Bell Atl., 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl., Id. at 563.

In assessing the adequacy of the complaint, the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) (citing Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000)). The court's consideration is limited to the four corners of the complaint; documents attached to the complaint as exhibits or incorporated in it by reference; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which he had knowledge, on which plaintiff relied in bringing suit. Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993). A motion to dismiss under 12(b)(6) requires the court to evaluate a complaint's legal feasibility, "not to assay the weight of the evidence which might be offered in support thereof." Amalgamated Bank of N.Y. v. Marsh, 823 F. Supp. 209, 215 (S.D.N.Y. 1993) (quoting Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984)).

<u>Discussion</u>

I.  <u>Dischargeability under § 523(a)(2)(A)</u>

Rescuecom maintains that the debt owed to it by the Defendant is nondischargeable

pursuant to § 523(a)(2)(A) based on the Defendant's misrepresentations regarding his

involvement in a competing business, Computer Medics.  Rescuecom alleges that the Defendant

started and operated Computer Medics with his wife, under his wife's name, in violation of the

Franchise Agreements.  Rescuecom further alleges that the Defendant diverted business from his

Rescuecom franchise to Computer Medics, and concealed revenues made through Computer

Medics, in order to generate additional income from computer repair sales and servicing without

having to pay the royalties and fees to the Plaintiff, as required under the Franchise Agreements.

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt:

> (2) for money, property, services, or an extension, renewal, or
> refinancing of credit, to the extent obtained by–
>
>> (A) false pretenses, a false representation, or actual
>> fraud, other than a statement respecting the debtor's
>> or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

Conscious deception and concealment of material information may constitute false

pretenses under § 523(a)(2)(A).  <u>Farraj v. Soliz (In re Soliz)</u>, 201 B.R. 363, 369 (Bankr.

S.D.N.Y. 1996); <u>Sandak v. Dobrayel (In re Dobrayel)</u>, 287 B.R. 3, 17 (Bankr. S.D.N.Y. 2002);

<u>Voyatzoglou v. Hambley (In re Hambley)</u>, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005).  "As

distinguished from false representation, which is an express misrepresentation[,] false pretense

involves an implied misrepresentation or conduct intended to create and foster a false

impression." In re Weinstein, 31 B.R. 804, 809 (Bankr. E.D.N.Y 1983). "'[O]missions or a failure to disclose on the part of the debtor can constitute misrepresentations for purposes of nondischargeability where circumstances of the case are such that omissions or failure to disclose create a false impression which is known by the debtor.'" Soliz, 201 B.R. at 369 (quoting Peterson v. Bozzano (In re Bozzano), 173 B.R. 990, 993 (Bankr. M.D.N.C. 1994); Grad v. Behnam (In re Behnam), 2005 Bankr. LEXIS 435, *20 (Bankr. E.D.N.Y 2005) (Silence may constitute false pretenses when there is a duty to disclose).

In order to establish that a debt is nondischargeable under § 523(a)(2)(A) as a debt for money, property, services, or credit obtained by false pretenses, a plaintiff must prove by a preponderance of the evidence that: "(1) the [defendant] made an omission or implied misrepresentation; (2) promoted knowingly and willingly by the defendant[]; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff[]; (4) which wrongfully induced the plaintiff[] to advance money, property, or credit to the defendant." Hambley, 329 B.R. at 396; Frishberg v. Janac (In re Janac), 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009); Dobrayel, 287 B.R. at 12; Varble v. Chase (In re Chase), 372 (B.R. 133, 137 (Bankr. S.D.N.Y. 2007).

The Defendant argues that the Plaintiff's claim under § 523(a)(2)(A) should be dismissed because the Complaint fails to allege that the Defendant wrongfully induced the Plaintiff to make an advance of any kind. Rescuecom alleges in its Complaint that the Defendant knowingly failed to disclose his involvement in, and revenues generated from, Computer Medics, in violation of the Franchise Agreements. The damages that are the subject of the Plaintiff's Complaint include $33,487.68 sought under a stipulated damages provision in the Franchise

Agreements, as well as undetermined royalties and fees based on the revenues generated by Computer Medics.

The dispositive question with respect to the claim asserted under § 523(a)(2)(A) is whether the Plaintiff has adequately alleged that Rescuecom was induced by the Defendant's alleged omissions and material misrepresentations to advance money, property, services, or credit, resulting in the debt that is the subject of the Complaint. The Court finds that it has not.

The requisite causal connection between the alleged misrepresentations or omissions and damages sought under § 523(a)(2)(A) is illustrated in Dobrayel. There, the plaintiff commenced a proceeding under § 523(a)(2)(A) against the debtor, a contractor, for failing to complete a renovation of the plaintiff's office in accordance with a written contract. The evidence established that after the contract price was paid in full, but before the job was complete, the debtor made false representations to the plaintiff regarding cost overages and recent changes in building codes, in order to induce the plaintiff to pay additional money over and above the agreed contract price. The court found certain claimed damages nondischargeable under § 523(a)(2)(A) to the extent that the plaintiff sustained the damages as a direct result of his reliance on the debtor's misrepresentations. For example, the plaintiff paid an additional $15,500 based on the defendant's misrepresentation that a building inspector was now requiring a special fire rated HVAC system to be installed. The court found that the plaintiff relied on the debtor's misrepresentation and was thereby damaged in the amount of $15,500. Dobrayel, 287 B.R. at 21. See also Hambley, 329 B.R. at 396 (holding the defendant obtained the money that constitutes the debt in the § 523(a)(2)(A) complaint, by "knowingly inducing a false and

misleading impression on the plaintiffs' behalf which . . . caused the plaintiffs to transfer the money into the defendants' personal accounts").

With respect to the cost to complete the project, however, the Dobrayel court concluded that the requisite "causal connection" between the debtor's false pretenses, false representation, or fraud and the damages sought was lacking.  Dobrayel, 287 B.R. at 24 (finding no "causal connection between Dobrayel's fraud, deceit and false pretenses which began in September 1998 and the cost to complete the project after Dobrayel quit" in mid-July 1999).  The court reasoned that the plaintiff's claim for damages to complete the project would have been the same had he abandoned the contract for any reason before the misrepresentations were made.  Id.  Accord, Fuda v. D'Atria (In re D'Atria), 128 B.R. 71, 76 (Bankr. S.D.N.Y. 1991) (holding that a breach of a restrictive covenant "cannot retroactively be characterized as premeditated fraud without proof that the [a]greement was tainted by fraud attributable to the debtor when he entered into the agreement"); Janac, 407 B.R. at 552 (dismissing § 523(a)(2)(A) complaint seeking a determination that unpaid legal fees constituted nondischargeable debt, for failure to present evidence that the defendant had the intent of not honoring the retainer agreement at the time it was signed).

Likewise, in the instant case, Rescuecom does not claim that it was induced to enter into the Franchise Agreements by misrepresentation or material omission, or that the Defendant had the intent to breach the Agreements at the time the Agreements were made.  Counsel for Rescuecom made this clear at the Hearing: "Rescuecom was never alleging that the secret scheme about the side business somehow fraudulently induced it into entering the contract . . . . It is a fraudulent scheme, and it harmed the [P]laintiff, but not by inducing it into the contract."

(Hearing Tr.[3] 13:12-15; 16:7-8).  Moreover, the sequence of the alleged events in the Complaint makes clear that Rescuecom cannot plausibly allege that the purported damages were caused by the Defendant's misrepresentations and omissions for purposes of nondischargeability under § 523(a)(2)(A).  Rescuecom sets forth the following time line in the Complaint: the Defendant breached the covenant not to compete by starting the Computer Medics business, as a result of which, Rescuecom sustained damages under a stipulated damages provision, as well as undetermined royalties and fees based on the revenue generated by Computer Medics, *after which* the Defendant concealed material information and submitted false financial statements regarding the breach.  The damages claimed by Rescuecom arose at the point of breach, prior to any alleged false pretense or omission made by the Defendant, and would be "precisely the same" without a claim of fraudulent conduct.  Dobrayel, 287 B.R. at 24; In re D'Atria, 128 B.R. at 76.  The debt, therefore, is not a debt within the scope of § 523(a)(2)(A).

II. Dischargeability under § 523(a)(2)(B)

Rescuecom also alleges that the debt owed to it is nondischargeable pursuant to § 523(a)(2)(B), based on false reports allegedly submitted by the Defendant to Rescuecom. Section 523(a)(2)(B) of the Bankruptcy Code excepts from discharge any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>
> (B) use of a statement in writing–
>
> (i) that is materially false;

---

[3] Citations to "Hearing Tr." refer to the transcript of the hearing held on August 13, 2009.

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with the intent to deceive.

11 U.S.C. § 523(a)(2)(B).

Rescuecom alleges that the Defendant knowingly submitted false "financial reports regarding sales and services rendered and revenues earned . . . with the specific intent of deceiving Plaintiff as to Defendant-Debtor's true sales and services rendered and true revenues earned through the Computer Medics business." (Complaint ¶ 41.)  The Defendant argues that the Plaintiff's claim under § 523(a)(2)(B) should be dismissed because the Complaint fails to sufficiently plead that the Plaintiff relied on any allegedly false written financial statements provided by the Defendant.

As with Rescuecom's claim under § 523(a)(2)(A), this claim fails because the requisite causal connection is lacking between the allegedly false written statements and the damages claimed by Rescuecom.  Rescuecom cannot allege that the allegedly false reports provided by the Defendant induced it to enter into the Franchise Agreements, because the reports were received by Rescuecom after the Franchise Agreements were entered into.  Moreover, the claimed damages arose when the Franchise Agreements were breached, prior to the receipt of the false statements.  Therefore, Rescuecom cannot plausibly allege that it suffered damages because it relied, let alone "reasonably relied" on the Defendant's false written statements, as it is required to do under § 523(a)(2)(B).  Daly v. Braizblot (In re Blaizblot), 194 B.R. 14, 19

(E.D.N.Y. 1996) (concluding that plaintiff failed to make prima facie case under § 523(a)(2)(B) because plaintiff could not have relied on contractual stipulations memorialized in writing two years after the loans were extended).  Taking all of the factual allegations in the Complaint as true for the purposes of this motion under Rule 12(b)(6), this Court finds that the Complaint does not set forth a plausible claim for relief under § 523(a)(2)(B).

III. Dischargeability under § 523(a)(6)

    The Plaintiff also asserts a claim of willful and malicious injury under § 523(a)(6). Under § 523(a)(6), a debt for "willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable.  11 U.S.C. § 523(a)(6).  "The terms 'willful' and 'malicious' are separate elements, and both elements must be satisfied" by a preponderance of the evidence.  Rupert v. Krautheimer (In re Krautheimer), 241 B.R. 330, 340 (Bankr. S.D.N.Y. 1999).  "[I]n applying the standard, courts properly should look to tort law to distinguish the 'willful and malicious' from the merely 'reckless' act."  Wright v. Bujnowski (In re Wright), 209 B.R. 276, 280 (E.D.N.Y. 1997).

    A. Willfulness

    The Supreme Court has held that "'[w]illful' modifies the word 'injury', indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) (emphasis in original). Debts arising from negligent or reckless conduct are not within the ambit of § 523(a)(6).  Id. While Geiger clarified the "willful" prong by removing negligent or reckless conduct from the scope of § 523(a)(6), the requisite state of mind necessary to satisfy the "willful" element was

not defined.  <u>Stahl v. Gross (In re Gross)</u>, 288 B.R. 655, 662 (Bankr. E.D.N.Y. 2003); <u>Chaffee v.</u>

<u>Chaffee (In re Chaffee)</u>, 2009 Bankr. LEXIS 2644, *17 (Bankr. N.D.N.Y. 2009).

While some courts maintain that specific intent to injure is not necessary under <u>Geiger</u> to

satisfy the willfulness prong, <u>Gross</u>, 288 B.R. at 662 (holding that "[a]n intentional wrongful act

that necessarily causes injury meets the willfulness standard under <u>Geiger</u>") (citation omitted);

<u>Yash Raj Films (USA) v. Ahmed (In re Ahmed)</u>, 359 B.R. 34, 41 (Bankr. E.D.N.Y. 2005)

(finding debtor's continuous knowing violation of the Copyright Act constitutes willfulness

under § 523(a)(6) "because the debtor knew that the injury was unavoidable or substantially

certain to occur because of his conduct"); <u>Prairie Eye Ctr. V. Butler (In re Butler)</u>, 297 B.R. 741,

747 (Bankr. C.D.Ill. 2003) (holding injury willful where debtor had specific intent to injure but

court noted that it was sufficient that debtor repeatedly and knowingly violated covenant not to

compete with knowledge that injury was substantially certain to occur), other courts have held

that specific intent to cause injury is required under <u>Geiger</u>.  <u>Sanger v. Busch (In re Busch)</u>, 311

B.R. 657, 669 (Bankr. N.D.N.Y. 2004) (noting and rejecting the minority view that a substantial

certainty of harm can satisfy § 523(a)(6) willfulness element); <u>Neshewat v. Salem (In re Salem)</u>,

290 B.R. 479, 485-486 (S.D.N.Y. 2003) (affirming nondischargeability determination under §

523(a)(6), where debtor did not merely commit an intentional act that was certain to cause

injury, but deliberately intended to cause the injury); <u>Essenfeld v. Schultz (In re Schultz)</u>, 239

B.R. 664, 670 (E.D.N.Y. 1999) (affirming dismissal of the plaintiff's § 523(a)(6) complaint

where bankruptcy court determined that intent to injure was not supported by record).

As alleged in the Complaint, the Defendant did not negligently or recklessly fail to remit royalties to the Plaintiff.   The Complaint sufficiently alleges that the Defendant had the requisite state of mind under either standard to satisfy the willfulness prong.   The Complaint alleges that the Defendant secretly diverted customers and business away from his Rescuecom franchises with the express purpose of depriving Rescuecom of royalties due under the Franchise Agreements.   (Complaint ¶ ¶ 13, 22.)   Rescuecom further alleges that the Defendant failed to make required annual financial disclosures in order to perpetuate the scheme.   (Complaint ¶ ¶ 17, 18.)   Plaintiff has sufficiently alleged that the Defendant acted with the specific intent to cause economic injury to the Plaintiff and necessarily knew with substantial certainty that the injury would result.

B. <u>Maliciousness</u>

"Malicious", as defined by the Second Circuit, can involve actual or constructive malice, and "means wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will."   <u>Navistar Financial Corp. v. Stelluti (In re Stelluti)</u>, 94 F.3d 84, 88 (2d Cir. 1996).   The conduct giving rise to certain causes of action may be inherently malicious, such as malicious prosecution or assault.   <u>Novartis Corp. v. Luppino (In re Luppino)</u>, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998).   In other cases, malice may be easily deduced where "the debtor's conduct giving rise to liability has no potential for economic gain or other benefit to the debtor, from which one could only conclude that the debtor's motivation must have been to inflict harm upon the creditor."   <u>Id.</u>   However, in cases where a debtor seeks profit or some other benefit, "the underlying conduct, however deplorable, would not give rise to liability under § 523(a)(6)

in the absence of some additional, aggravating conduct on the part of the debtor of sufficient gravity to warrant an inference of actual malice under the Second Circuit decision in [Stelluti]." Id.  "Under the law in this Circuit, the element of malice may be found . . . upon a finding of aggravated, socially reprehensible conduct sufficient to justify an imputation of malice to the debtor." Bundy Am. Corp. v. Blankfort (In re Blankfort), 217 B.R. 138, 146 (Bankr. S.D.N.Y. 1998)

Accordingly, a knowing breach of contract generally does not satisfy the malicious element of § 523(a)(6) absent "some aggravating circumstance evidencing conduct so reprehensible as to warrant denial of the 'fresh start' to which the 'honest but unfortunate' debtor would normally be entitled under the Bankruptcy Code." Luppino, 221 B.R. at 700; Blankfort, 217 B.R. at 144 (malicious prong will be satisfied where debtor willfully breached a contractual duty "in circumstances where it is evident that the conduct will cause injury to the plaintiff and, most important . . . under some aggravating circumstance to warrant the denial of discharge"); Alessi v. Alessi (In re Alessi), 405 B.R. 65, 67-68 (Bankr. W.D.N.Y 2009);  Hambley, 329 B.R. at 402; Traditional Indus. v. Ketaner (In re Ketaner), 149 B.R. 395, 396 (Bankr. E.D. Va. 1992) (intentional breach of non-compete clause may constitute willful and malicious injury); compare Rupert v. Krautheimer (In re Krautheimer), 241 B.R. 330, 335 (Bankr. S.D.N.Y. 1999) (a finding of breach of contract, in itself, has no bearing on whether there is willful and malicious injury under § 523(a)(6); Dorr & Associates v. Pasek (In re Pasek), 129 B.R. 247, 252 (Bankr. Wyo. 1991), aff'd, 983 F.2d 1524 (10th Cir. 1993) (intentional breach of contract without more cannot establish willful and malicious injury).

Aggravating Circumstances

Whether circumstances are sufficiently aggravating to support a finding of malice is a fact-specific determination made on a case-by-case basis.  See Stelluti, 94 F.3d at 88 (malice may be implied "by the acts and conduct of the debtor in the context of [the] surrounding circumstances") (internal quotations and citation omitted). "A court should look to the totality of the circumstances to determine malice."  Forrest v. Bressler (In re Bressler), 387 B.R. 446, 455 (Bankr. S.D.N.Y. 2008).  "Review of the case's circumstances is perhaps made even more necessary due to the surprisingly little judicial and scholarly commentary discussing the degree or nature of 'wrongfulness' that constitutes 'malice' under section 523(a)(6)." Id. (internal quotes and citation omitted).

Aggravating circumstances sufficient to warrant a finding of malicious injury in connection with a breach of contract were found in Blankfort, which, like the instant case, involves a debtor that breached the terms of a franchise agreement.  The Blankfort court based its finding of malice under § 523(a)(6) on the debtor's "socially reprehensible" conduct in repeatedly violating an injunction and other district court orders.  Blankfort, 217 B.R. at 145.

> It is this [c]ourt's conclusion that the [d]ebtor's persistent violations of the Injunction Order and [d]istrict [c]ourt orders . . . ,which the Magistrate Judge found to be 'blatant and willful,' constitute the type of aggravating circumstances which the courts in the Second Circuit and elsewhere have found to be sufficient to satisfy the 'malicious' requirement of subsection (6).  The Debtor's persistent violation of Bundy's rights under the [f]ranchise [a]greement and under federal statute, coupled with the [d]istrict [c]ourt's explicit finding of 'blatant and willful' violation of not one but four orders of the [d]istrict [c]ourt, constitutes 'willfil and malicious injury' as a matter of law.

Id.

Alessi also illustrates circumstances that have been found to justify a finding of malice. There, the plaintiff, former husband of the debtor, commenced an action under § 523(a)(6), claiming that the debtor's failure to pay him proceeds from the sale of certain real estate pursuant to a written asset distribution agreement, constituted willful and malicious conduct. The Bankruptcy Court agreed and granted the plaintiff's motion for summary judgment, holding that "the present facts indicate more than a simple knowing failure to pay a contractual obligation.  By agreement, Lee and Amy had identified the time and source of payment . . . . Despite a written demand from Lee's counsel, she refused to turn over the required funds . . . ." Alessi, 405 B.R. at 68.  Of particular importance to the Alessi court was that the funds, which were in an amount certain, were contractually committed, and were to be turned over once the real estate was sold.

> This case presents not just a failure to pay a debt, but a failure to pay funds that the debtor had agreed specifically to earmark for that purpose . . . . The resulting injury was willful, in that Ms. Alessi deliberately and intentionally refused to turn over the sale proceeds.  By violating a contractual provision for use of committed funds, Amy Alessi inflicted a wrongful financial loss without just cause or excuse.  Hence, she caused an injury that was malicious within the meaning of section 523(a)(6).

Id.

The court in Ketaner also found aggravating circumstances warranting denial of discharge under § 523(a)(6).  There, the debtor sold his business, DSA, to the plaintiff, and remained president and CEO of the company pursuant to an employment contract that contained a covenant not to compete.  Ketaner, 149 B.R. at 396.  After the relationship disintegrated over disputes and failed negotiations regarding his unpaid annual bonus, the debtor left his position to

begin a competing company.  Id. at 398.  The debtor "induced almost the entire staff . . . to

resign and work for his new company," and "necessarily put DSA out of business."  Id. at 401.

The court concluded that the debtor's knowing breach of the covenant not to compete was

malicious based on the facts and circumstances surrounding the breach.  The court explained that

the debtor's selling his company with "impunity," "proselytizing" the entire staff, and "thumbing

his nose" at the buyer established the debtor's intent to harm his former employer, warranting an

exception to discharge under § 523(a)(6).  Id. at 401.

     The instant case is before this Court on a pre-answer motion to dismiss; necessarily,

therefore, the factual record is not as fully developed as in the cases discussed above.  The task

on this motion is to determine whether, 'accept[ing] as true all of the factual allegations set out

in [the] [C]omplaint, draw[ing] inferences from those allegations in the light most favorable to

[P]laintiff, and constru[ing] the [C]omplaint liberally,' Gregory v. Daly, 243 F.3d at 691

(quoting Tarshis v. Riese Org., 211 F.3d at 35), a "plausible" claim for relief under § 523(a)(6)

has been stated. Bell Atl., 550 U.S. at 559.  Here, the Complaint pleads circumstances

surrounding the Defendant's alleged breach that may, at trial, be shown to constitute aggravating

circumstances sufficient to establish malicious injury under § 523(a)(6).  The Complaint does

not merely allege that the Defendant violated the non-compete clause, and failed to pay royalties

pursuant to the Franchise Agreements.  Rather, it goes further, alleging that the Defendant

secretly opened a competing business under his wife's name in order to avoid detection, actively

diverted customers and business away from his own Rescuecom franchises, and submitted false

reports to Rescuecom to conceal his actions, with the specific intent to deprive the Plaintiff of

royalties due under the Franchise Agreements. (Complaint ¶¶ 13-15, 22.)

Although the facts alleged do not correspond neatly with the facts found in any of the cases discussed above, review of aggravating circumstances is necessarily a case-specific inquiry which requires the Court to examine the totality of the circumstances. Bressler, 387 B.R. at 455. Under this standard, and given the undeveloped state of the factual record, this Court concludes that the motion to dismiss claims under § 523(a)(6) must be denied.

Motion for Leave to Amend

Although the Plaintiff has not made a separate motion to amend the Complaint, the Plaintiff requests such relief in its opposition to the motion. The Plaintiff contends that it was induced into entering into the Franchise Agreements by a false written financial statement, specifically, the Defendant's Request for Consideration submitted to it by the Defendant. The Plaintiff states that the Defendant falsely represented that he had $25,000 in cash and $100,000 in real estate that was free and clear of any mortgage, when in fact his bank account was overdrawn and his wife was the only title holder of the real estate. Plaintiff seeks leave to amend the Complaint to assert a claim based on these allegations pursuant to § 523(a)(2)(B).

Fed. R. Civ. P. 15(a), made applicable by Fed. R. Bankr. P. 7015, governs motions for leave to amend pleadings, and provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); see also Foman v. Davis, 371 U.S. 178, 182 (1962) (generally, permission to amend should be freely granted). A motion for leave to amend should be denied in instances of bad faith, undue delay or prejudice, or where the amendment would be futile. Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d. Cir. 2001).

The Plaintiff's request for leave to amend does not present an instance of bad faith or undue delay. The failure to file a formal motion for leave to amend under Fed. R. Civ. P. 15(a)

is not fatal.  <u>McLaughlin v. Anderson</u>, 962 F.2d 187, 195 (2d Cir. 1992) (noting that court is not required to deny leave to amend in the absence of a formal motion where plaintiff clearly made request to amend).  No claim is made by the Defendant that the Plaintiff's proposed amendment is futile on its face.  Accordingly, the Plaintiff's request for leave to amend is granted.

Conclusion

For the foregoing reasons, the Defendant's motion to dismiss is granted in part and denied in part.  The Complaint fails to state claims under §§ 523(a)(2)(A) and 523(a)(2)(B), and to that extent the motion to dismiss is granted.  The Complaint sufficiently pleads a claim under § 523(a)(6).  The Plaintiff's request for leave to amend the Complaint is granted.  A separate Order shall issue herewith.

Dated: Brooklyn, New York
       November 30, 2009

*/s/Carla E. Craig*          
CARLA E. CRAIG
Chief United States Bankruptcy Judge
